PEOPLE v YUI KONG YU.—

On August 31, 1989, this court (M-4656) denied defendant's motion for poor person relief (i.e., free transcript) and assignment of counsel with leave to renew upon "affidavit from counsel stating his retainer agreement with defendant along with an affidavit from defendant listing his previous sources of income, an explanation of the sources used for the retainer agreement and copies of his tax returns for the years 1985-1986-1987; and insofar as it seeks an enlargement of time the motion is granted insofar as to enlarge appellant's time within which to perfect the appeal to the December, 1989 Term of this Court".

Although defendant and his trial counsel, Sidney Baumgarten, submitted affidavits attesting to defendant's alleged status

as an indigent, such is not sufficient. It is the policy of this court in cases involving defendants convicted in a narcotics prosecution who retained private counsel below to scrutinize the application to ascertain whether defendant is entitled to such relief as permitted under CPLR 1101 and 1102. Defendant was convicted on a charge of second degree criminal sale of a controlled substance.

Several months after the entry of this court's order, the United States Court of Appeals for the Second Circuit, in *Fullan v Commissioner of Corrections* (891 F2d 1007), granted a writ of habeas corpus to a State criminal defendant who had been denied a free transcript of his trial by the Second Department. The majority held (2 to 1) that the Second Department improperly denied petitioner Fullan a free transcript, despite his indigency, because he had paid $27,500 to his trial counsel by liquidating his total net worth and borrowing, and $10,000 to his retained appellate counsel through funds raised by his family and friends. In response to an inquiry, the Clerk of the Second Department informed petitioner that the Justices believed that petitioner's application "seems to come with ill grace, when the result would be that counsel received $10,000 for handling the appeal, but the taxpayers of this State would have to bear the cost of paying for the transcript" (relying on Rules of Second Department, Appellate Division, § 671.3 [b] [3]). The circuit court concluded the Second Department rule prohibiting a retained counsel from receiving a free transcript ran afoul of the Fourteenth Amendment. Furthermore, the circuit court criticized the Second Department for focusing its inquiry on assets owned or controlled by family or friends instead of focusing on defendant's assets. The court stated "[t]he State is not entitled to treat the funds of others, over which a defendant has no control, as assets of the defendant. Nor is [State's] reference to the fact that Fullan paid his trial counsel $27,500 pertinent * * * unless it was a fraudulent conveyance" *(supra,* at 1011). The court further noted that a "state has no right to dictate how the defendants' family and friends will spend their money. * * * [I]f the convicted person is indigent and has not had control over the funds raised to pay his appellate attorney, the State is obligated to provide him with a free transcript" *(supra,* at 1011-1012). Nevertheless, the circuit court remanded the matter to the District Court for a hearing, to determine the truth of Fullan's allegations.

Defense counsel, relying on *Fullan (supra),* urges that since defendant is now indigent, and respondent People have not

offered any opposition, this court's request for his "old tax returns, previous sources of income and for his retainer agreement with [him] for the trial proceedings is onerous, improper, and unconstitutional".

Although *Fullan (supra)* might be fairly read to preclude a court from penalizing a defendant rendered indigent now, due to his allocation of resources, by denying him a free copy of the transcript, nothing in the opinion precludes this department from exercising its authority to ascertain the validity of defendant's indigency status. Where a court is not satisfied with the documentation provided by defendant, it can require the movant to produce further documentation focusing on his alleged indigency. There is nothing inappropriate or violative of defendant's rights about inquiring into defendant's personal income sources over which he has control.

If, for example, defendant's tax returns reveal he owns a house, earned $200,000 a year or paid his trial counsel a retainer of $20,000, a serious question would arise concerning his alleged indigency status, requiring at the very least an explanation. Nevertheless, defendant seeks to preclude this court from even undertaking a limited inquiry into his personal finances, a position which is unsupportable, even in light of *Fullan (supra)*.

Under these circumstances, defendant must still comply with this court's previous order to determine what assets he has control over. If no tax returns were required to be filed, defendant can obtain such a statement from the Internal Revenue Service and provide this court with a sworn statement concerning his previous sources of income. Concur— Carro, J. P., Asch, Ellerin, Wallach and Rubin, JJ.